IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TAMEKA J.,

          Plaintiff,

   v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

CIVIL ACTION FILE NO.

1:18-CV-3016-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision

of the Commissioner of the Social Security Administration which denied her disability

application. For the reasons set forth below, the court **ORDERS** that the

Commissioner's decision be **AFFIRMED**.

## I.      Procedural History

Plaintiff filed an application for a period of disability and disability insurance

benefits on February 23, 2015, alleging that she became disabled on January 15, 2015.

[Record ("R.") at 16, 725, 879]. After Plaintiff's application was denied initially and

upon reconsideration, a hearing was held by an Administrative Law Judge ("ALJ") on

May 11, 2017. [R. at 30-63, 713-40]. The ALJ issued a decision denying Plaintiff's claim on February 28, 2018, and the Appeals Council denied Plaintiff's request for review on May 9, 2018. [R. at 1-7, 13-23]. Plaintiff filed a complaint in this court on June 22, 2018, seeking judicial review of the Commissioner's final decision. [Doc. 4]. The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Facts

The ALJ found that Plaintiff has the following impairments which are "severe" within the meaning of the Social Security regulations: headaches, chronic low back pain, post-traumatic stress disorder ("PTSD"), pain in shoulder, and cervicalgia. [R. at 18]. The ALJ also found that Plaintiff has the following non-severe impairments: tinnitus, hypertension, and substance abuse (alcohol, cannabis, and tobacco). [R. at 19]. Despite the presence of these impairments, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 19-20]. The ALJ found that Plaintiff's residual functional capacity allows her to perform past relevant work as a nurse's assistant and massage therapist. [R. at 20-22]. As a result, the ALJ concluded that Plaintiff has not been under a disability from January 15, 2015, the alleged onset date, through the date of the ALJ's decision. [Id.].

The decision of the ALJ [R. at 16-23] states the relevant facts of this case as modified herein as follows:

The pertinent treatment notes from the Veterans Affairs ("VA") Medical Center report that the claimant received treatment for PTSD, low back pain, neck pain, and foot pain. Objective findings have been minimal. In December 2014, diagnoses included major depressive disorder, cannabis use disorder, and alcohol use disorder. The claimant reported doing "okay" at the time. In January 2015, the claimant's mental status examination showed appropriate grooming and hygiene, good eye contact, no psychomotor agitation or retardation, organized and goal-directed thought processes, average concentration and intelligence, and fair insight and judgment. In March 2015, the claimant requested that a form be completed stating that she was stable enough to return to work. When the claimant was seen for a mental status evaluation in May 2015, the results were essentially unchanged from January 2015. The claimant reported getting out of the house more often and decreasing her cannabis use. The treatment provider noted that, during the examination, the claimant smiled frequently. (Exhibit B5F).

The claimant cares for six children, and her duties include preparing meals, cleaning the home, and helping with homework. Her symptoms appear to be decreased

AO 72A

(Rev.8/82)

when she is compliant with medication and abstains from substance abuse. In May 2015, the claimant was found to be stable and coping adequately. (Exhibit B1F, 19F).

The claimant was incarcerated from mid-May 2015 until early July 2015. She was pregnant at the time. The claimant stated that she had a history of treatment for PTSD but that she had not been on medication for a while. She also reported a history of physical and sexual abuse. She stated that, because she was pregnant, she was going to hold off on treatment. The claimant denied problems with mood, anxiety, or psychotic symptoms. In June 2015, she was found to have no medical complaints. (Exhibit B3F).

Darrel L. Murray, M. D., conducted a consultative examination of the claimant in September 2015. The claimant told Dr. Murray that she is able to make it through the day without medications. Dr. Murray described the claimant's appearance as "non-distressed." She reported to Dr. Murray that she was able to shop for groceries, prepare meals, and do laundry. Dr. Murray reported no significant functional limitations. He diagnosed PTSD but no physical impairment. Dr. Murray opined that the claimant could sit up to eight hours, stand/walk up to eight hours, and was able to bend, kneel, crawl, stoop, and crouch. Dr. Murray reported no limitations with respect to the claimant's ability to reach, handle, feel, grasp, push, pull, or lift with both hands.

AO 72A
(Rev.8/82)

Dr. Murray noted that there were no workplace, visual, or environmental limitations and that there was no need for an assistive device. (Exhibit B4F).

The claimant presented to the Atlanta VA Medical Center in March 2016 complaining of low back pain and pain in the sacroiliac joints. The claimant rated the severity of her pain as 3/10. The examination revealed no significant abnormalities, and the claimant was referred to physical therapy. (Exhibit B10F/1-3).

At the administrative hearing, the claimant testified that she has six children ranging in age from 13 years old to two months old. She stated that her main problem pertains to mental health issues. She testified that she was sexually assaulted by a physician while in the military. The claimant reported mood swings, uncontrollable crying spells, problems with memory, anxiety, and difficulty sleeping. She was arrested for murdering her boyfriend in 2015, but, according to her, the charges were later dropped based on self-defense. She reported that she had received a 70% disability rating from the VA, which was later upgraded. She asserted that the rating was based on PTSD. The claimant reported problems with her back, feet, and legs, and she stated that she wore special stockings for her legs. She appeared at the hearing with a cane; however, the record fails to establish the medical necessity of an assistive device. According to the claimant, she can stand no more than 30 to 40 minutes due

to pain in her feet caused by plantar fasciitis. She stated that she could sit 30 to 45 minutes but would have to constantly move around and that she could walk two miles with stops. The claimant also reported that her mother is her caregiver and helps with the children.

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.  Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 42 U.S.C. §§ 423(d)(2) and (3).

AO 72A
(Rev.8/82)

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. at 1440. "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that [s]he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving her disability. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not engaged in substantial gainful activity. See id. The claimant must establish at step two that she is suffering from a severe

impairment or combination of impairments. <u>See</u> <u>id.</u> At step three, the Commissioner will determine if the claimant has shown that her impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. <u>See</u> <u>Doughty</u>, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. If the claimant is able to make this showing, she will be considered disabled without consideration of age, education, and work experience. <u>See</u> <u>id.</u> "If the claimant cannot prove the existence of a listed impairment, [s]he must prove at step four that [her] impairment prevents [her] from performing [her] past relevant work." <u>Doughty</u>, 245 F.3d at 1278. "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides [her] past relevant work." <u>Id.</u> If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. <u>See</u> 20 C.F.R. §§ 404.1520(a), 416.920(a).

## IV.   Findings of the ALJ

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2.   The claimant has not engaged in substantial gainful activity since January 15, 2015, the alleged onset date. (20 C.F.R. § 404.1571, *et seq.*).

3.   The claimant has the following severe impairments: headaches, chronic low back pain, PTSD, pain in shoulder, and cervicalgia. (20 C.F.R. § 404.1520(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

5.   The claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) except that she is limited to simple and semi-complex tasks in a low stress environment with no fast pace or high production quotas and she is best in a small work group. She can interact appropriately with supervisors but would be best with only superficial interaction (incidental contact where there is no problem solving) with the public.

6.   The claimant is capable of performing her past relevant work as a nurse's assistant and massage therapist.

7.   This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 C.F.R. § 404.1565).

8.   In comparing the claimant's residual functional capacity with the physical and mental demands of her past relevant work, the claimant is able to perform it as actually and generally performed.

9.   The claimant has not been under a disability, as defined in the Social Security Act, from January 15, 2015, the alleged onset date, through the date of the ALJ's decision. (20 C.F.R. § 404.1520(f)).

[R. at 18-22].

AO 72A

(Rev.8/82)

## V.  Discussion

Plaintiff argues that the ALJ's decision denying her disability application should be reversed.  [Doc. 13].  As previously noted, the ALJ found at step four of the sequential evaluation that Plaintiff is able to return to her past relevant work.  Plaintiff contends that the ALJ's finding on this issue is contrary to law and not supported by substantial evidence.  [Id. at 7-12].  According to Plaintiff, the ALJ did not properly evaluate the medical opinions in the record and failed to include limitations found by medical sources when assessing Plaintiff's residual functional capacity ("RFC").  [Id. at 8-11].  Plaintiff also argues that the ALJ should have recontacted medical sources, arranged for a consultative examination, or scheduled a review of the record by a medical expert.  [Id. at 11-12].  For a number of reasons, the court finds that the ALJ's decision was supported by substantial evidence and was based upon proper legal standards.

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments. . . . Along with [her] age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work." Lewis, 125 F.3d at 1440 (citing 20 C.F.R. §§ 404.1545(a), 404.1520(f)).  "RFC

10

includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, coworkers and work pressure." <u>Dempsey v. Comm'r of Social Security</u>, 454 Fed. Appx. 729, 731 n.3 (11th Cir. 2011) (citation omitted).  In determining the claimant's RFC, the ALJ is required to consider the limiting effects of all the claimant's impairments, even those that are not severe.  <u>See</u> <u>Phillips</u>, 357 F.3d at 1238 ("[T]he ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case."); 20 C.F.R. § 404.1545(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."); 20 C.F.R. § 416.945(e) (same).

In the present case, the ALJ found that Plaintiff's RFC allows her to perform work at the medium exertional level.  [R. at 20].  The ALJ also found that Plaintiff is limited to simple and semi-complex tasks in a low stress environment with no fast pace or high production quotas and that she is best in a small work group.  [<u>Id.</u>].  Finally, the ALJ found that Plaintiff can interact appropriately with supervisors but that it would be best if she had only superficial interaction (incidental contact where there is no problem solving) with the public.  [<u>Id.</u>].  Plaintiff argues that the ALJ's RFC is contradicted by the medical opinions issued by State agency consultants.  [Doc. 13 at

7-9]. Specifically, Plaintiff cites to records from Allen Carter, Ph.D., and R. Chahal, M.D. [Id. at 8; R. at 718-22, 732-39].

Dr. Carter reviewed the record in June 2015 and opined, *inter alia*, that Plaintiff "will have intermittent difficulty carrying out detailed instructions" but that she "would be able to sustain concentration for simple tasks." [R. at 721]. Dr. Carter also found that Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting. [Id.]. Dr. Carter further opined that Plaintiff "has moderate reduction in ability to interact with large groups and coworkers but [she] is able to interact with supervisors appropriately." [Id.].

In January 2016, Dr. Chahal reviewed the record and found that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. [R. at 733]. Dr. Chahal opined that Plaintiff is able to maintain concentration, persistence, or pace on simple and semi-complex tasks on a sustained basis but that she "may have increasing difficulty as the tasks become more complex and detailed." [R. at 736]. Dr. Chahal also opined that Plaintiff "has moderate reduction in ability to interact with large groups and coworkers but [that she] is able to interact with supervisors appropriately." [Id.]. Finally, Dr. Chahal found that Plaintiff is able to adapt to the work-related stress of routine but expected changes in the work setting. [R. at 737].

12

Plaintiff argues that the ALJ's RFC assessment is erroneous because it does not include a finding that Plaintiff has only an "intermittent ability to perform certain work-related functions related to concentration, persistence and pace, and does not address the issue of changes in the workplace at all." [Doc. 13 at 8]. Plaintiff writes, "[C]ritically, given that at best the only medical opinions of record state that [Plaintiff] may be able to perform simple tasks without limitation, then Plaintiff would be limited to the performance of unskilled jobs." [Id. at 8-9]. Plaintiff contends that the ALJ failed to carry her burden at step four of the sequential evaluation because, although the ALJ found that Plaintiff can return to her work as a nurse's assistant and massage therapist, both of these are skilled jobs. [Id. at 9]. In addition, according to Plaintiff, an "'intermittent ability' to perform detailed tasks, or limitations of the ability to maintain concentration for extended periods," are problematic for both jobs. [Id.]. The undersigned disagrees with Plaintiff and finds that substantial evidence supports the ALJ's decision.

The court notes initially that the determination about whether a claimant has met the statutory definition of disability is reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d), 416.927(d). The Eleventh Circuit has also noted that "the task of determining a claimant's residual functional capacity and ability to work is within the

13

province of the ALJ, not of doctors." Robinson v. Astrue, 365 Fed. Appx. 993, 999 (11th Cir. 2010). Moreover, the opinions cited by Plaintiff in support of her arguments are offered by State agency consultants who did not treat or even examine Plaintiff. The regulations issued by the Social Security Administration "provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p. "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." Himes v. Comm'r of Social Security, 585 Fed. Appx. 758, 762 (11th Cir. 2014) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)); accord Lee v. Colvin, 2015 WL 5307513, at *3 (M.D. Fla. September 10, 2015) ("The Regulations establish a 'hierarchy' among medical opinions that provides a framework for determining the weight afforded each medical opinion . . . ."). "The opinions of examining physicians are generally given more weight than non-examining physicians; treating physicians receive more weight than non-treating physicians; and specialists on issues within their areas of expertise receive more weight than non-specialists." Schuhardt v. Astrue, 303 Fed. Appx. 757, 759 (11th Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). Although the opinions of treating physicians must be accorded substantial weight unless good cause exists to

14

discredit them, no such deference must be given to the opinions of non-treating, non-examining consultants, such as those relied upon by Plaintiff. See Lewis, 125 F.3d at 1440; Swindle v. Sullivan, 914 F.2d 222, 226 n.3 (11th Cir. 1990); McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

As noted *supra*, Plaintiff argues that the ALJ did not address the limitations found by State agency consultants Dr. Carter and Dr. Chahal with regard to Plaintiff's ability to deal with changes in the workplace. However, even the sources cited by Plaintiff do not support significant limitations in this area of functioning. Dr. Carter opined that, although Plaintiff has a "reduced ability to adjust to changes in work-like setting[,] there is not a substantial loss." [R. at 722]. Dr. Chahal found that Plaintiff actually retains the ability to adapt to the work-related stress of routine but expected changes in the work setting. [R. at 737].

With regard to Plaintiff's ability to perform tasks at particular skill levels, Plaintiff correctly notes that Dr. Carter found that she will have intermittent difficulty performing detailed tasks. [R. at 721]. However, Plaintiff is incorrect when she asserts that "the only medical opinions of record state that she may be able to perform simple tasks without limitation." [Doc. 13 at 8-9]. Although Plaintiff cites to Dr. Chahal in support of this assertion, the State agency reviewing source did not find that

Plaintiff was limited to performing only simple tasks. Instead, Dr. Chahal opined that Plaintiff has the ability to maintain concentration, persistence, or pace on simple and semi-complex tasks on a sustained basis. [R. at 736]. The ALJ made a finding consistent with Dr. Chahal's opinion when the ALJ found that Plaintiff's RFC allowed her to perform "simple and semi-complex tasks." [R. at 20]. The vocational expert ("VE") testified at the administrative hearing that Plaintiff's work as a nurse's assistant and a massage therapist were semi-skilled jobs (Specific Vocational Preparation ("SVP") level 4) and that a hypothetical person with the limitations described in the ALJ's RFC could perform these jobs. [R. at 58-60].

Plaintiff is correct when she asserts that the ALJ did not adopt all of the opinions offered by the State agency medical consultants. However, the ALJ was not obligated to do so. The ALJ explained in her decision that she was giving only partial weight to the opinions of the State agency consultants. [R. at 22]. As previously noted, the ALJ was not required to have good cause to discount the opinions of the non-treating, non-examining consultants. Moreover, the Eleventh Circuit has held that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision . . . ." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005); accord Brito v. Comm'r, Social Security Admin., 687 Fed. Appx. 801, 804 (11th Cir. 2017) ("[T]he

16

ALJ was not required to examine or reference every piece of evidence, so long as it is evident, as it is here, that the ALJ considered Brito's medical condition as a whole."). The decision of the ALJ reveals that she considered Plaintiff's condition as a whole, and substantial evidence supports her decision to give only partial weight to the opinions of the State agency medical consultants.

Plaintiff alleged that she became disabled on January 15, 2015. [R. at 725, 879]. The ALJ noted that, although Plaintiff has received treatment from the VA for PTSD, low back pain, neck pain, and foot pain, the objective findings have been minimal. [R. at 20]. Plaintiff's diagnoses have included major depressive disorder, cannabis use disorder, and alcohol use disorder. [R. at 20, 1083, 1105, 1129, 1150, 1153]. The ALJ pointed out that, in January 2015, the month that Plaintiff allegedly became disabled, the mental status examination showed that she had appropriate grooming and hygiene, good eye contact, no psychomotor agitation or retardation, organized and goal-directed thought processes, average concentration and intelligence, and fair insight and judgment. [R. at 20, 1150]. In March 2015, Plaintiff requested that a form be completed stating that she was stable enough to return to work. [R. at 20, 1131]. The ALJ noted that, when Plaintiff was seen in early May 2015, the mental status examination was essentially unchanged from the one completed in January. [R. at 20,

AO 72A
(Rev.8/82)

1129]. Plaintiff was found to have appropriate grooming and hygiene, good eye contact, no psychomotor agitation or retardation, organized and goal-directed thought processes, average concentration and intelligence, and fair insight and judgment. [Id.]. During the early May 2015 evaluation, Plaintiff reported that she was "doing okay," that she was getting out of the house more often, and that she was decreasing her cannabis use. [R. at 20, 1127]. The treatment provider also noted that Plaintiff was smiling frequently. [Id.].

As the ALJ pointed out, Plaintiff's treatment notes show that she often has not been compliant with medication. [R. at 21, 961, 991, 1012, 1128, 1152, 1341-42]. When Plaintiff was incarcerated in mid-May 2015, she informed treatment providers that she had not been on medication for a while. [R. at 21, 961]. The ALJ noted that records from that period of time show that Plaintiff was stable and coping adequately. [R. at 22, 961]. A mental status evaluation performed in mid-May 2015 when Plaintiff was in the Fulton County Jail showed that her intellectual functioning was average, her judgment was limited/fair, her behavior was cooperative, and her psychomotor activity, speech, thought content, and cognitive functioning were all unremarkable or normal. [R. at 1051]. Treatment records from the Fulton County Jail in June 2015 indicated that Plaintiff had no medical complaints. [R. at 21, 1046].

18

Dr. Darrel Murray conducted a consultative examination of Plaintiff in September 2015. [R. at 21, 1061-69]. Plaintiff told Dr. Murray that she is able to make it through the day without medications and that she is able to shop for groceries, prepare meals, and do laundry. [R. at 22, 1063]. Dr. Murray diagnosed PTSD, but he reported no significant functional limitations and found that Plaintiff had no physical impairment. [R. at 21, 1065]. The physician opined that Plaintiff was able to sit up to eight hours, stand/walk up to eight hours, and bend, kneel, crawl, stoop, and crouch. [R. at 21, 1061-69]. Dr. Murray also found that there were: no limitations with respect to reaching, handling, feeling, grasping, pushing and pulling, or lifting with both hands; no workplace, visual, or environmental limitations; and no need for an assistive device. [Id.]. When Plaintiff was seen for mental status examinations in February and March 2016, she had good eye contact, her thought process was organized and goal directed, there was no psychomotor agitation or retardation, her concentration was average, and her insight and judgment were fair. [R. at 1308-09, 1327-28]. In light of these fact, the court finds that the ALJ did not err when she gave only partial weight to the State agency consultants' opinions and that substantial evidence supports the ALJ's finding that Plaintiff's RFC allowed her to perform medium exertional level

19

work involving, *inter alia*, simple and semi-complex tasks in a low stress environment with no fast pace or high production quotas. [R. at 20].

Plaintiff argues that the ALJ should have recontacted the State agency consultants for clarification, arranged for a consultative examination, or scheduled a review of the record by a medical expert. [Doc. 13 at 11-12]. However, as the Commissioner notes, the authority cited by Plaintiff does not support her arguments. [Doc. 15 at 11-12]. Although Plaintiff cites to 20 C.F.R. § 404.1519p(b), the regulation addresses the issue of recontacting a medical source who has conducted a consultative examination. The regulation does not address the reports of non-examining State agency medical consultants such as those in the present case. See 20 C.F.R. § 404.1519p. Moreover, the relevant regulations provide that the Social Security Administration "will determine the best way to resolve" any inconsistency or insufficiency in the record. 20 C.F.R. § 404.1520b. In such cases, the Commissioner may ask the claimant to undergo a consultative examination. Id. Plaintiff, however, has failed to show that the ALJ was required to order a consultative examination based on any insufficiency or inconsistency. The court finds that the evidence in the record was sufficient for the ALJ to make an informed decision about Plaintiff's disability claim.

In conclusion, the undersigned concludes that the ALJ did not commit reversible error in her evaluation of Plaintiff's disability claim. The record evidence supports the ALJ's decision to give only partial weight to the opinions of the State agency medical consultants. As the ALJ noted, Plaintiff's symptoms appear to decrease when she is compliant with medications and when she abstains from substance abuse. During those times, the findings from Plaintiff's mental status examinations have been generally unremarkable. In addition, substantial evidence in the record supports the ALJ's RFC finding that Plaintiff was capable of performing medium exertional level work involving simple and semi-complex tasks in a low stress environment with no fast pace or high production quotas and with only superficial interaction with the public. The VE testified that a person with the RFC limitations found by the ALJ could perform Plaintiff's past relevant work as a nurse's assistant and a massage therapist, both of which were semi-skilled jobs. A reasonable person would accept the relevant evidence as adequate to support the ALJ's conclusion that Plaintiff was not under a disability from January 15, 2015, through the date of the ALJ's decision. See Lewis, 125 F.3d at 1440. Therefore, remand is not appropriate.

AO 72A

(Rev.8/82)

## VI. Conclusion

For all the foregoing reasons and cited authority, the court finds that the ALJ's decision was supported by substantial evidence and was based upon proper legal standards. It is, therefore, **ORDERED** that the Commissioner's decision be **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.[1]

**SO ORDERED**, this 27th day of August, 2019.


_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE

---

[1]On December 26, 2018, an administrative order was issued staying this case in light of lapse of appropriations. [Doc. 14]. The stay was lifted as of January 25, 2019.

AO 72A

(Rev.8/82)